UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BRANDON BOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-460-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| SERGEANT JOSHUA HIGGINS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

State inmate Brandon Bogan has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. [Record No. 1] The Court now reviews the complaint prior to service of process. It will dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010). The Court accepts all non-conclusory factual allegations in the complaint as true and liberally construes its legal claims in the plaintiff's favor at this stage of the proceedings. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Bogan is an inmate confined at the Blackburn Correctional Complex in Lexington, Kentucky. [Record No. 1 at 3] He alleges that, on November 11, 2025, Sergeant Joshua Higgins charged him with a Category III-24 disciplinary offense for allowing another inmate to use his phone account. *Id*. at 4; [Record No. 1-1 at 1-2] Bogan denied the allegation during Higgins's investigation. However, he expressly admitted to Higgins that when he was previously confined at Green River Correctional Complex ("GRCC") he had given his

-1-

Personal Identification Number ("PIN") to 8-10 other inmates.  *See id*.; [Record No. 1-1 at 3-4, 13]  Bogan alleges that the prisoner who used his PIN at Blackburn was also previously confined at GRCC.[1]  [Record No. 1 at 4]  Bogan complains that it was "unfair" for Higgins to charge him with a "major" disciplinary offense when he charged the other inmate with only a lesser offense for his involvement.  *See id*. at 5.  And he contends that Higgins violated his right to equal protection under the law as protected by the Fourteenth Amendment.  *See id*.

One week later, Sergeant Jimmy Howard conducted the adjustment hearing on the charge against Bogan.  [Record No. 1 at 6]  Bogan read a statement at the hearing and requested that his charges be reduced to a lesser offense.  However, Howard found him guilty of the Category III-24 offense and imposed sanctions including the loss of phone privileges for 60 days and the loss of 30 days of good conduct time.

Bogan argues that Howard based his decision upon "reasons that would not hold up in [a] court of law."  *Id*.  Specifically, he contends that the evidence Howard relied upon – video and audio footage showing that the other inmate used Bogan's PIN to make a phone call and officer statements to this effect – did not prove that he permitted the other inmate to use his PIN.[2]  *See id*. at 6-7.  [Record No. 1-1 at 5-7]  Bogan appealed to the warden, again complaining of the disparity in charges.

---

[1]   Bogan implies that the other inmate may have obtained or been given his PIN when he was at GRCC and before he arrived at Blackburn.  [Record No. 1 at 5-7]  Bogan incorrectly contends that Blackburn officials could not find him guilty of the offense if the underlying conduct occurred at another prison.  [Record No. 1-1 at 13]

[2]   Bogan also complains that Higgins's investigation report "failed to note that shared phone information in the past happened at another facility."  [Record No. 1 at 7]  But that assertion is incorrect.  Higgins's report states that Bogan told him that "I have shared my Pin at green river."  [Record No. 1-1 at 3]

Warden Jesse Stack affirmed the conviction but removed the loss of 30 days good conduct time as a sanction. *See id*. at 7-8. Bogan contends that Howard's actions violated his right to equal protection under the law in violation of the Fourteenth Amendment and inflicted cruel and unusual punishment in violation of the Eighth Amendment.[3] [Record No. 1 at 8] He further contends that Stack violated his right to equal protection under the law pursuant to the Fourteenth Amendment by only partially granting his appeal. *See id*. at 8-9.[4]

Bogan sues all three defendants in both their individual and official capacities. [Record No. 1 at 9] And he seeks compensatory damages for "mental and emotional pain and suffering" as well as punitive damages. *See id*. at 10.

The Court has thoroughly reviewed the complaint and the materials that Bogan filed in support of it and concludes that it should be dismissed for several reasons. First, the official capacity claims against all defendants must be dismissed. Such a claim, although nominally

---

[3]    While Bogan complains about the sufficiency of the evidence used against him, he does not assert any due process claim arising from his conviction. Even if he had, the conviction plainly satisfied the deferential "some evidence" standard articulated in *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). The other inmate's possession of Bogan's PIN, particularly when coupled with Bogan's admission that he had shared it with other inmates while confined at GRCC, afforded the Adjustment Committee with more than a rational basis to conclude that Bogan had shared it – whether at GRCC or Blackburn – in violation of prison rules.

[4]    Bogan appears to have exhausted all administrative remedies available to him. The Kentucky Department of Corrections' Corrections Policies and Procedures ("CPP") identify a broad range of grievable issues. *See* CPP 14.6 (II)(B) (May 7, 2025). However, matters involving disciplinary and adjustment procedures, decisions, and appeals are specifically identified as "non-grievable issues." *See* CPP 14.6 (II)(C)(4). The carve-out also expressly includes any "incident where the grievant received a disciplinary report, …"). *Id*. Bogan's claims appear to fall within this exception. Bogan appealed the Adjustment Committee's decision to the warden, which is the only review mechanism available to him. *See* CPP 15.6 (II)(F)(1) (Feb. 4, 2025) ("An inmate may appeal in writing the adjustment decision to the Warden."), CPP 15.6 (II)(F)(7) ("An appeal may not be taken beyond the Warden").

asserted against the official, is "in fact . . . against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). Therefore an "official capacity" claim against a state official is actually a claim directly against the state agency which employs him. *Hopper v. Phil Plummer*, 887 F. 3d 744, 760 n.4 (6th Cir. 2018). Bogan's official capacity claims are therefore civil rights claims asserted against the Kentucky Department of Corrections ("KDOC").

However, the KDOC is not subject to suit under § 1983 in federal court. KDOC is an agency of the Commonwealth of Kentucky. *See* Ky. Rev. Stat. § 12.250; *Gibbons v. Kentucky Dept. of Corrections*, No. 3: 07-CV-P697-S, 2008 WL 4127847, at \*2-3 (W.D. Ky. Sept. 4, 2008). Therefore, KDOC is not a "person" subject to liability under Section 1983. *Puckett v. Lexington-Fayette Urban Co. Gov't.*, 833 F.3d 590, 598 (6th Cir. 2016) (*citing Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Further, the Eleventh Amendment deprives federal district courts of subject matter jurisdiction over a claim for money damages against a state and its agencies. *Ernst v. Rising*, 427 F. 3d 351, 358 (6th Cir. 2005) (*citing Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). The Court therefore will dismiss the official capacity claims.

Second, Bogan alleges only psychological suffering attributable to the defendants' actions. Federal law provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C.A. § 1997e(e). Where a prisoner states only that he suffered emotional harm from a defendant's acts or omissions, Section 1997e(e) bars relief. *Minneci v. Pollard*, 565 U.S. 118, 129, (2012) ("Prisoners bringing federal lawsuits ... ordinarily may not seek damages for

mental or emotional injury unconnected with physical injury.").  He therefore may not recover compensatory damages for the harms alleged.  The Sixth Circuit has held, however, that § 1997e(e) does not prevent a prisoner from seeking punitive damages.  *Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020).

Third, Bogan's Eighth Amendment claim against Howard fails to state a claim.  As a threshold matter, "the issuance of an allegedly false misconduct ticket does not constitute punishment under the Eighth Amendment."  *Snider v. Gibson*, No. 1: 25-CV-1040, 2025 WL 2921893, at *4 (W.D. Mich. Oct. 15, 2025) (collecting cases).  Further, an inmate alleging an Eighth Amendment violation must show both that he "was incarcerated under conditions posing a substantial risk of serious harm" and that the defendant "knew of and disregarded that excessive risk to the inmate's health or safety."  *Finley v. Huss*, 102 F.4th 789, 805 (6th Cir. 2024).  A sixty-day suspension of phone privileges does not involve a "substantial risk of serious harm," and hence does not amount to cruel and unusual punishment.  *See Allen v. Alexsander*, No. 19-1315, 2019 WL 4667707, at *1-2 (6th Cir. Sept. 12, 2019) (90-day phone restriction imposed upon inmate for violating prison policy by sharing his phone privileges with his cellmate failed to state Eighth Amendment claim; absent any showing that basic human needs were not met, a denial of privileges does not constitute an Eighth Amendment violation) (*citing Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)).  And "the possibility that [a prisoner's] misconduct finding may prevent him from being paroled does not amount to cruel and unusual punishment."  *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017).

Finally, Bogan's equal protection claims against all three of the defendants fail to state a claim.  The equal protection clause of the Fourteenth Amendment "is essentially a direction

that all persons similarly situated should be treated alike." *Snider*, 2025 WL 2921893, at *4 (*citing City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To state an equal protection claim, a plaintiff must allege that he was treated differently from a "comparator," meaning someone who is similarly situated to him "in all relevant respects." *See Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (*quoting United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). *See also Nordlinger v. Hahn*, 505 U.S. 1, 10-11 (1992).

Bogan alleges that, compared to the other inmate, more serious charges were filed, different sanctions were imposed, with more serious possible consequences for his parole consideration.[5] [Record No. 1 at 4-8] However, he does not allege that the other inmate was "similarly situated" to him. Indeed, he affirmatively alleges the opposite. Bogan complains that the other inmate was different because he was "already serving a 180-day phone restriction." [Record No. 1 at 4] Accordingly, the facts in Bogan's complaint fail to allege the facts necessary to state a viable equal protection claim. *Cf. Wright v. Morris*, No. CV 21-11491, 2022 WL 4112235, at *3 (E.D. Mich. Aug. 5, 2022), *report and recommendation adopted*, 2022 WL 4110155 (E.D. Mich. Sept. 8, 2022); *Spencer v. Sheldon*, No. 22 CV 210, 2022 WL 1803341, at *3 (N.D. Ohio June 2, 2022).

In any event, the difference in charges was attributable to the different conduct involved for each inmate: the other prisoner was charged based upon his *use* of another prisoner's PIN;

---

[5]     For a Category III-24 offense, Bogan faced a range of penalties ranging from level "2" to level "7". *See* KDOC CPP 15.2(II)(C)(24) (Feb. 4, 2025). Bogan received the lowest possible level of sanctions, a level "2" loss of phone privileges. *See* CPP 15.2 (II)(G)(2). In comparison, for a Category I-6 offense, a prisoner faces a range of penalties ranging from level "1" to level "4". *See* CPP 15.2(II)(C)(6). Thus, while Bogan faced a potentially higher penalty, the one he actually received was both one that he would have faced even if convicted of the lesser offense and one that could have been imposed upon the other prisoner.

-7-

Bogan was charged based upon his *providing* his PIN to another prisoner.  Thus, there was a rational basis for treating the two inmates differently.  *Cf. Briscoe v. Mohr*, No. 19-3306, 2020 WL 1813660, at *2 (6th Cir. Mar. 16, 2020).  For these reasons, Bogan's equal protection claims fail.  Accordingly, it is hereby

**ORDERED** as follows:

1. All claims contained in Plaintiff Brandon Bogan's complaint [Record No. 1] are **DISMISSED**, with prejudice.

2. This matter is **DISMISSED** and **STRICKEN** from the docket.

Dated:  March 26, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky